IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNION PROPERTIES LLC,<br>　　　Relator,<br><br>v.<br><br>BOY SCOUTS OF AMERICA and<br>JOHN R. CRAIGHEAD CO., INC.,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>Civil Action No. A-11-CA-32<br><br>JURY TRIAL DEMANDED |

## RELATOR'S' ORIGINAL COMPLAINT FOR FALSE PATENT MARKING

### A. Parties

1.　　Relator, Union Properties LLC ("Union Properties"), is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 10916 Palgrave Court, Austin, Texas 78739.

2.　　Defendant, Boy Scouts of America ("BSA"), is a corporation organized and existing under the laws of the United States of America, with its registered place of business at 1325 West Walnut Hill Lane, Irving, Texas 75038.  Defendant may be served with process through its registered agent, Richard John Matthews, 1325 West Walnut Hill Lane, Irving, Texas 75038.

3.　　Defendant, John R. Craighead Co., Inc. ("Craighead"), is a corporation organized and existing under the laws of the State of Colorado, with its registered place of business at 3120 Blake Street, Denver, Colorado 80205.  Defendant may be served with process through its registered agent, John Julian Craighead, 3120 Blake Street, Denver, Colorado 80205.

## B. Jurisdiction

4.     This Court has jurisdiction over the lawsuit because the action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has general and specific personal jurisdiction over Defendants by virtue of, *inter alia*, Defendants' persistent and continuous contacts with this District, including: (1) active and regular conduct of business during the relevant time period in this District; (2) deriving substantial revenue from goods and/or services provided to individuals and other entities in Texas and in this District; (3) offering for sale and selling falsely-marked products in this District.

## C. Venue

6.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

## D. Facts

7.     This is an action for false patent marking under 35 U.S.C. § 292, which provides that any person may sue to recover the civil penalty for false patent marking. Relator brings this *qui tam* action on behalf of the United States of America.

**False Marking by Defendants BSA and Craighead**

8.     Defendants have made, used, sold, and/or offered for sale in the United States and/or imported into the United States products, including by way of example only, the 2010 National Jamboree Leather Belt, the 2005 National Jamboree Leather Belt, the Northern Tier Leather Belt, and the Florida Sea Base Leather Belt.

9.     Defendant Craighead has also made, used, sold, and/or offered for sale in the United States and/or imported into the United States other custom leather belts, including by way of example only, belts having the names of various Boy Scout Camps, Councils, Units (such as

2

Troops, Crews, Ships, Teams, and Packs), and other phrases relating to both BSA and non-BSA entities.

10. Defendants mark and/or have marked, affix and/or have affixed, and/or use and/or have used in advertising in connection with their products, including but not limited to the 2010 National Jamboree Leather Belt, the 2005 National Jamboree Leather Belt, the Northern Tier Leather Belt, the Florida Sea Base Leather Belt, and other custom leather belts (collectively the "Falsely-Marked Products") an expired or otherwise inapplicable patent—U.S. Patent No. 4,204,470 ("the '470 Patent").

11. As illustrated in Exhibit A, Defendants marked the 2010 National Jamboree Leather Belt with the '470 Patent.

12. As illustrated in Exhibit B, Defendants marked the 2005 National Jamboree Leather Belt with the '470 Patent.

13. A true and correct copy of U.S. Patent No. 4,204,470 ("the '470 Patent") is attached as Exhibit C.

14. The '470 Patent, entitled "Indicia Forming Multiple Die," was filed on August 31, 1978, and issued on May 27, 1980.

15. The '470 Patent expired on or about August 31, 1998, pursuant to 35 U.S.C. § 154(c).

16. Defendants falsely marked the Falsely-Marked Products after the expiration of the '470 Patent.

17. Moreover, the '470 Patent discloses an apparatus for forming decorative designs on a malleable or deformable material, such as a leather belt. (*See* Ex. C, '470 Patent at [57] (Abstract), col. 1, ll. 6–12 (Field of the Invention), col. 5, l. 24–col. 8, l. 26 (Claims).) Clearly,

the claims of the '470 Patent cover a device for making products, rather than any products made by using the patented device. (*See id.* at col. 5, l. 24–col. 8, l. 26).

18. Since any product produced by a device that was protected by the '470 Patent, such as Defendants' leather belts, never could have been protected by the '470 Patent, Defendants falsely marked the Falsely-Marked Products.

19. Defendant BSA is a large, sophisticated organization with over 100 years of experience in selling BSA's merchandise throughout the United States. (*See, e.g.*, Ex. D, BOY SCOUTS OF AMERICA OFFICIAL CATALOG – SCOUTSTUFF.ORG, http://www.scoutstuff.org/bsasupply/ (last visited Jan. 10, 2011). BSA has many years of intellectual property experience, including its own Licensing Department, which licenses BSA's intellectual property to third parties. (*See e.g.*, Ex. E, BSA LICENSING, http://www.scouting.org/sitecore/content/Licensing.aspx (last visited Jan. 10, 2011); Ex. F, Current Licensees, http://www.scouting.org/sitecore/content/Licensing/Current%20Licensees.aspx (last visited on Jan. 10, 2011). BSA is the assignee of at least one U.S. Patent. BSA's intellectual property is a valuable asset to BSA and is consistently reviewed and monitored in the course of BSA's business. (*See, e.g.*, Ex. G., PROTECTING THE BRAND, http://www.scouting.org/sitecore/content/Licensing/Protecting%20the%20Brand.aspx (last visited Jan. 10, 2011).

20. Defendant Craighead and/or its predecessors has been manufacturing leather goods since 1876 and incorporated since 1930. (*See* Ex. H, COMPANY HISTORY OF JOHN R. CRAIGHEAD CO. INC., http://www.kidscowboy.com/companyhistory.html (last visited Jan. 10, 2011); Ex. I, Colorado Secretary of State Summary, http://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=19871091042&entityId2=19871091042&srchTyp=ENTITY&fileId=19871091042

(last visited Jan. 10, 2011).  Craighead manufactures the Falsely-Marked Products under license from Defendant BSA.  (*See* Ex. J, LICENSED BOY SCOUT LEATHER CAMP BELT, CUSTOM EMBOSSED LETTERING, http://www.camp-belts.com/ (last visited Jan. 10, 2011); Ex. K, JOHN R. CRAIGHEAD,http://www.scouting.org/sitecore/content/Licensing/Current%20Licensees/Licensee%20Information/John%20R%20Craighead.aspx (last visited Jan. 10, 2011).  Craighead further manufactures custom leather belts for entities other than BSA, which are also marked with the '470 Patent.

21. Defendants knew that expired patents do not covered any product.

22. Defendants knew that the '470 Patent was expired.  Moreover, given the filing and issue dates of the '470 Patent, Defendants did not have a reasonable belief that the '470 Patent was unexpired.

23. Defendants knew that expired '470 Patent did not cover any of the Falsely-Marked Products.

24. Defendants further knew that, even if Defendants' products were made using the apparatus claimed in the '470 Patent, the Falsely-Marked Products were not inventions that practiced the '470 Patent.

25. The Falsely-Marked Products could have easily been made without falsely marking them with the '470 Patent.  Moreover, some of BSA's non-Jamboree tooled leather belts are not marked with any patent numbers.

26. Defendants knew that it was a false statement to mark the Falsely-Marked Products with an expired or otherwise inapplicable patent.

27. Defendants did not have, and could not have had, a reasonable belief that the Falsely-Marked Products were properly marked.

28. Defendants marked the Falsely-Marked Products for the purpose for deceiving the public into believing that the products were patented and to thwart competition.

**Injury to the United States of America**

29. Defendants' practice of false marking is injurious to the United States.

30. Defendants' false marking alleged in the preceding paragraphs caused injury to the sovereignty of the United States arising from violations of federal law, specifically, the violation of 35 U.S.C. § 292. The United States has conferred standing on "any person," including the Relator, as the United States' assignee of the claims in the Complaint to enforce 35 U.S.C. § 292.

31. Defendants' false marking alleged in the preceding paragraphs caused proprietary injury to the United States, which, together with 35 U.S.C. § 292, would provide another basis to confer standing on Relator as the United States' assignee.

32. The marking and false marking statutes exist to provide the public notice of patent rights. Congress intended the public to rely upon marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as in Defendants' Falsely-Marked Products.

33. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain, such as those disclosed in the '470 Patent.

34. The public's interest in preventing false marking was so great that the United States enacted a statute that sought to encourage private parties to enforce the statute. By permitting members of the public to bring qui tam suits on behalf of the government, Congress authorized private persons, such as Relator, to help control false marking.

35. Defendants' false marking alleged in the preceding paragraphs deter innovation and stifle competition in the marketplace for at least the following reasons: (1) if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; (2) false marks may deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and (3) false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

36. Defendants' false marking alleged in the preceding paragraphs misleads the public into believing that the '470 Patent gives Defendants control of Defendants' Falsely-Marked Products (as well as similar products), which places the risk of determining whether Defendants' Falsely-Marked Products and similar products are controlled by the '470 Patent on the public, thereby increasing the cost to the public of determining who, if anyone, in fact controls the intellectual property embodied in Defendants' Falsely-Marked Products.

37. Thus, in each instance where a representation is made that Defendants' Falsely-Marked Products are protected by the '470 Patent, a member of the public desiring to participate in the market for products similar to Defendants' Falsely-Marked Products must incur the cost of determining whether the involved patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise be required to pay.

38. Defendants' false marking alleged in the preceding paragraphs also creates a misleading impression that Defendants' Falsely-Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

39. Every person or company in the United States is a potential entrepreneur regarding the apparatus described in the '470 Patent. Moreover, every person or company in the United States is a potential competitor with respect to Defendants' Falsely-Marked Products that are marked with the '470 Patent.

40. Each of Defendants' Falsely-Marked Products, is likely to, or at least has the potential to, discourage or deter each person or company, which view such marking from commercializing a competing product, even though the '470 Patent is expired and inapplicable.

41. Defendants' false marking alleged in the preceding paragraphs has quelled competition regarding similar products to an immeasurable extent, thus, causing harm to the United States in an amount that cannot be determined readily.

42. Defendants' false marking alleged in the preceding paragraphs constitutes wrongful and illegal advertisement of a patent monopoly that does not exist and, as a result, has resulted in increasing, or at least maintaining, the market power or commercial success of Defendants' Falsely-Marked Products.

43. Each individual false marking is likely to harm, or at least potentially harm, the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(b).

44. For at least the reasons stated in the preceding paragraphs, Defendants' false marking caused injuries to the United States arising from violations of federal law and has caused proprietary injuries to the United States.

### E. Count 1 – False Marking

45.     Relator incorporates all of the preceding paragraphs as if fully set herein. Defendants have violated 35 U.S.C. § 292 by falsely marking the Falsely-Marked Products for the purpose for deceiving the public.

### F. Jury Demand

46.     Relator asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### G. Prayer

47.     For these reasons, Relator requests a judgment against Defendants for the following:

    a.  A judgment in favor of Relator that Defendants have violated 35 U.S.C. § 292 by falsely marking products with knowledge that the patents have expired or are otherwise inapplicable for the purpose of deceiving the public;

    b.  An accounting of total unit sales, per unit sales price, per unit revenue, gross revenue, per unit profit, and gross profit for any falsely-marked articles;

    c.  A monetary award pursuant to 35 U.S.C. § 292 in the form of a civil fine of $500 per falsely-marked article, or an alternative reasonable amount determined by the Court taking into consideration the sales, price, the total revenue and gross profit derived from the sale of falsely-marked articles and the degree of intent to falsely mark the articles, one-half of which shall be paid to the United States and the other half to the Relator;

    d.    A judgment declaring that this case is "exceptional" under 35 U.S.C. § 285; and awarding Relator its costs, including reasonable attorney's fees, in bringing and maintaining this lawsuit;

    e.    An injunction ordering Defendants, and their officers, agents, servants, employees, attorneys, licenses, successors, and assigns and those in active concert or participation with any of them, to cease all existing acts of false marking within 90 days and from committing any new acts of false marking;

    f.    An award of pre-judgment and post-judgment interest on any monetary award;

    g.    Costs of court;

    h.    All other relief, at law and in equity, which this Court deems appropriate.

Respectfully submitted,

 /s/ James N. Willi
James N. Willi
Texas Bar No. 00795719
jwilli@willilawfirm.com
Tracy J. Willi
Texas Bar No. 00784633
twilli@willilawfirm.com
Willi Law Firm, P.C.
9600 Escarpment Blvd.
Ste. 745, PMB 34
Austin, TX 78749-1983
Tel. (512) 288-3200
Fax (512) 288-3202

ATTORNEYS FOR RELATOR,
UNION PROPERTIES LLC