IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNION PROPERTIES LLC, | § | |
| Relator, | § | |
| | § | |
| v. | § | Civil Action No. A-11-CA-32-SS |
| | § | |
| BOY SCOUTS OF AMERICA and | § | JURY TRIAL DEMANDED |
| JOHN R. CRAIGHEAD CO., INC., | § | |
| Defendants. | § | |

**RELATOR'S RESPONSE TO DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
TO SET ASIDE ENTRY OF DEFAULT**

Relator Union Properties LLC ("Union Properties") requests the Court to deny Defendant Boy Scouts of America's ("BSA") motion to set aside entry of default. In short, BSA has not shown good cause for the Court to set aside the entry of default, as required by Federal Rule of Civil Procedure 55(c).

## I. FACTS

Relator, acting on its own behalf, as a *qui tam* relator on behalf of the United States of America ("United States"), and on behalf of the general public, asserted claims of false patent marking under 35 U.S.C. § 292 against BSA and Craighead on January 11, 2011. (*See* Doc. No. 1, Relator's Orig. Compl.) This case involves false marking of products with a patent, which: (1) never covered the products; and (2) expired in 1998. BSA was served in accordance with the Federal Rules of Civil Procedure on January 21, 2011. (*See* Doc. No. 7.) Craighead was served on January 25, 2011. (*See* Doc. No. 8.)

On February 3, 2011, Peter J. Brann called Tracy J. Willi, counsel for Union Properties, and identified himself as counsel for Craighead. (Willi Decl. ¶ 4.) Brann did not identify himself as counsel for BSA. (*Id*. ¶ 4.) In this initial telephone call, Brann informed Willi that Craighead's insurance had denied Craighead coverage for this claim and he wanted to know

Union Properties' settlement position. (*Id*. ¶ 4.) Willi explained to Brann that Union Properties would like to obtain some informal discovery from Craighead to evaluate a reasonable settlement. (*Id*. ¶ 4.) Further, Willi explained to Brann that she would not oppose Craighead's application for an extension of time to file an answer. (*Id*. ¶ 4.) On the same day, Willi sent Brann a letter that confirmed her understanding that Brann was counsel for Craighead, but not BSA, and confirmed the agreement to not oppose Craighead's application for a thirty day extension of time to file an answer:

> This letter explains the legal basis of the above-referenced lawsuit and provides a summary of recent cases to assist you and **your client** in evaluating the nature of this lawsuit.
>
> …
>
> As demonstrated in the above cases, there is considerable uncertainty regarding the range of fines that may be imposed upon **your client**. The type of information generally discoverable in these cases includes the specific information which is requested from **your client** as follows:
>
> (1) A copy of any patent licenses relating to U.S. Patent No. 4,204,470 ("the '470 Patent") between **your client** and all third parties;
>
> (2) A copy of all license agreements between **your client and Defendant Boys Scouts of America ("BSA")** relating to the sale of products identified in Relator's Original Complaint;
>
> (3) The total number of units for each of the products identified in Relator's Original Complaint sold by **your client** from January 11, 2005 (six years prior to the date the above-referenced lawsuit was filed) to present;
>
> (4) The total gross revenues from sales of units for each of the products identified in Relator's Original Complaint sold by **your client** from January 11, 2005 to present;
>
> (5) The total gross profits[1] from sales of units for each of the products identified in Relator's Original Complaint sold by **your client** from January 11, 2005 to present;
>
> (6) A copy of any relevant insurance policy; and

---

[1] "Gross profit means gross revenue minus cost of goods sold. Gross profit explicitly excludes operating expenses and overhead." (Willi Decl., Ex. 1, Letter from T. Willi to P. Brann (Feb. 3, 2011).)

> (7)    Correspondence between **your client** and any insurance companies relating to the above-referenced lawsuit.
>
> To conduct our due diligence and to satisfy any future U.S. Department of Justice inquiry relating to this lawsuit, we would appreciate **your client's cooperation** in providing the above discoverable information informally so that the parties can be in a position to evaluate a reasonable settlement.
>
> As we discussed, we will not oppose **your client's application for an extension of time to answer the complaint** in this lawsuit to provide an additional 30 days beyond its current due date.

(Willi Decl., Ex. 1, Letter from T. Willi to P. Brann (Feb. 3, 2011) (emphasis added).) Willi never told Brann that "such extensions were handled informally in the Western District of Texas" as alleged by Brann. (Def's Mot. at 2; Willi Decl. ¶ 5.) To the contrary, the confirming letter to Brann demonstrates what was discussed—that Craighead could file a formal application for an extension of time that would not be opposed. (Willi Decl., Ex. 1 at 3.)

Since BSA was served on January 21, 2011, its responsive pleading was due on February 11, 2011. (*See* Doc. No. 7.) As of February 11, 2011, BSA had not filed an answer or a motion pursuant Federal Rule of Civil Procedure 12, and BSA had made no attempt to contact counsel for Union Properties. (Willi Decl. ¶ 6.)

As of February 14, 2011, there had been no response to the letter to counsel for Craighead dated February 3, 2011. Then, on February 14, 2011, Brann sent an email to Willi with statistics demonstrating that the average settlement for false patent marking cases between May and December 2010, was $60,000.00. (*See* Willi Decl., Ex. 2, Email string between J. Willi and P. Brann (Feb. 14, 2011); *see also* Willi Decl., Ex. 3, http://www.grayonclaims.com/home/2011/2/13/summary-of-false-marking-settlements-may-december-2010.html (last visited Feb. 24, 2011).) Since Craighead failed to provide any information in response to the February 3, 2011 letter, and responded only by providing information on an average settlement, this was taken as an indication that Craighead might be

3

amenable to a settlement at the average settlement value.  In an email directed only to Craighead through its counsel, but not to BSA, Union Properties proposed a settlement at the average settlement value:

> In the absence of any information from **your client** relating to the sales revenues and profits from the sale of falsely-marked belts over the last six years, it is extremely difficult to determine a reasonable offer.  Thus, from the basic information that we have available, in order to avoid further costs of litigation to either side, my client proposes a confidential settlement offer of $60,000.00.  In return, my client would release **Craighead**.  Additionally, under an agreed order, **Craighead** would be able to sell all of its inventory of falsely-marked leather belts manufactured on or before the date of the Court's dismissal order without further liability.  Such a release would result in minimal disruption to **Craighead's** business activities.  Please be aware that half of this settlement would go to the U.S. government, and the other half would go to my client.  My firm's attorney's fees are paid out of my client's share of the settlement.
>
> We will both be out of town all day tomorrow.  If this offer is acceptable to **your client**, I will draft the appropriate Confidential Settlement Agreement, Stipulation of Dismissal, and Proposed Order of Dismissal for you and **your client's** review and signature.  This offer expires on Friday, February 18, 2010 at 5:00 p.m. CST.

(Willi Decl., Ex. 2 (emphasis added).)

On February 16, 2011, Brann called Willi to inform her that he was going to attempt to delay this lawsuit as long as possible because he was confident that proposed legislation would eventually be passed that would be applied retroactively against this case.[2]  (Willi Decl. ¶ 9.) Alternatively, Brann suggested that Craighead would agree to settle the matter for $5,000.00. (Willi Decl. ¶ 9.)  Willi requested that Brann confirm Craighead's February 16, 2011, settlement proposal and telephone discussion in writing.  (Willi Decl. ¶ 9.)

On February 17, 2011, Brann sent an email confirming Craighead's settlement proposal and the February 16, 2011, telephone discussion.  (*See* Willi Decl., Ex. 5, Email from P. Brann to T. Willi (Feb. 17, 2011).)  In that email, Brann indicated that he did not "represent" BSA, but instead, demonstrated that BSA and Craighead were adverse to one another, stating that BSA had

---

[2] The same day, Brann reinforced his commitment to delay the case by sending Willi an email attaching a copy of proposed legislation.  (Willi Decl., Ex. 4, Email from P. Brann to T. Willi (Feb. 16, 2011).)

"demanded that [Craighead] defend and indemnify [BSA] in this litigation." (*Id.*)  Further, Willi never agreed to "another 30-day enlargement, which would have made the response due at the end of March" as alleged by Brann (Def.'s Mot. at 3), and this fact is demonstrated by Brann's lack of reference to any such agreement in the confirming email.  (*See id.*)  Craighead offered $5,000.00 to settle, which would have represented 0.0122% of its maximum liability in this case[3] and only 0.1% of its "total income" of approximately $5,000,000.00 from the sales of falsely-marked leather belts over the last five years.  (*See id.*)

In response to that email indicating that BSA and Craighead were adverse to one another, Willi requested Brann to provide her with the contact information for BSA's attorney so that she could convey the settlement offer to BSA as well as to Craighead:

> I understand from your statement below that counsel for BSA has contacted you to make a demand for indemnity from Craighead.  Please send me the contact information for the attorney representing BSA who contacted you.

(Willi Decl., Ex. 6, Email string between T. Willi and P. Brann (Feb. 17, 2011).)  In an attempt to resolve the case more quickly, Union Properties changed its previous offer to Craighead to allow Craighead to pay for the release of BSA's liability as well.  (*See id.*)

Meanwhile, BSA's deadline for answering this lawsuit, February 11, 2011, had long since passed.  Since BSA had not filed a responsive pleading in this lawsuit and neither the BSA nor counsel for BSA had contacted counsel for Union Properties by February 17, 2011, Union Properties requested entry of default against BSA.  (*See* Doc. 9.)  The Clerk entered default as to BSA that same day.  (*See* Doc. 10.)

---

[3] Brann disclosed that Craighead had manufactured approximately 82,000 falsely-marked leather belts during the "statutory period."  (Willi Decl., Ex. 5.)  Brann further disclosed that Craighead had made approximately $5,000,000.00 in "total income" over that last five years (*see id.* ("just under $1 million a year")) and that Craighead's president, John Craighead had been paid approximately $500,000.00 in salary over the last five years (*see id.* ("his annual salary is approximately $100,000")).  The maximum penalty for the sale of 82,000 units at $500 per unit is $41,000,000.00.  *See* 35 U.S.C. § 292.

5

Later in the day on February 17, 2011, Brann denied the previously indicated adversity between Craighead and BSA and now stated he was also counsel for BSA in this lawsuit. ((*See* Willi Decl., Ex. 7, Email string between P. Brann and T. Willi (Feb. 17, 2011) ("I am representing BSA, and thus you need to contact them through me.")) By the time Brann clearly indicated that communications to him should be considered by Union Properties to be communications to BSA, the default had already been entered. (*See* Willi Decl., Ex. 8.)[4]

On February 18, 2011, an "unopposed" motion was filed on behalf of both Craighead and BSA that would have granted both of the defendants until March 31, 2011 to file a "responsive pleading" to Relator's Complaint.[5] (*See* Doc. 11.) After the local counsel hired by Brann was notified of the dispute, that motion was withdrawn and an amended unopposed motion was filed to allow Craighead only (not BSA) until March 4, 2011 to file an answer, but no other responsive motion pursuant to Federal Rule of Civil Procedure 12. (*See* Doc. 13.) This second "unopposed" motion was in compliance with the agreement between Brann and Willi.

Later that day on February 18, 2011, Brann admitted in an email that BSA had never contacted him to let him know that BSA had been served with this lawsuit. (*See* Willi Decl., Ex. 11, Email from P. Brann to T. Willi (Feb. 18, 2011).) Since BSA had never notified Brann that it had been served, it is implausible to suggest that BSA hired Brann as its counsel to defend it before the default was entered. Willi responded to Brann's e-mail and pointed out the contradiction in his statement:

> I disagree with your rendition of the events leading up to today. If you did not know BSA had been served with this lawsuit, as you state your e-mail to me today, it is difficult to believe that BSA has hired you to defend it in this lawsuit.

---

[4] After entry of default, and after Brann indicated that he was counsel for BSA to whom settlement offers should be presented, Union Properties made a more comprehensive settlement offer containing the details of terms and conditions, but that settlement offer has been rejected. (See Willi Decl., Ex. 9, Email string between P. Brann and J. Willi (Feb. 22, 2011); *id.*, Ex. 10, Email string between J. Willi and P. Brann (Feb. 25, 2011).)

[5] Willi immediately contacted local counsel, Price Ainsworth, to let him know that BSA's and Craighead's motion was opposed and informed him about the entry of default against the BSA. (Willi Decl. ¶ 20.) Willi also informed the Court that BSA's and Craighead's motion was opposed. (*See* Doc. 12.)

> I did not consider my communications with you to be communications with BSA. The first time you clearly communicated that you are also BSA's attorney (as opposed to the attorney representing only Craighead who hoped to settle the entire case without having to discuss it with BSA) was your response to an e-mail below, which I received after the default had been entered against BSA.

(Willi Decl., Ex. 12, Email string between P. Brann and T. Willi (Feb. 18, 2011).) Brann provided Willi with the following unprofessional and threatening response: "As you will discover, I have a low tolerance for people who lie to me." (*Id.*)

Ultimately, BSA filed its motion to set aside entry of default, in which Brann represented, *inter alia*, that "BSA requested, and Craighead agreed, to defend BSA in this action." (Def.'s Mot. at 2, Ex. 1 at 2.) Notably missing from the motion to set aside default is any proof that Craighead agreed to indemnify BSA for BSA's independent liability in this case, leaving the presumption that Craighead and BSA are adverse in this case and, thus, cannot be represented by the same counsel.[6] Also notably missing from the motion is any proof of an attorney-client relationship between BSA and Brann prior to the entry of default. Counsel for Union Properties requested, but Brann refused to provide any such proof:

> If you have any authority for your demand that I produce my engagement letter or any agreements between Craighead and BSA relating to this litigation, please provide it. Otherwise, please do not waste my time.

(*See* Willi Decl., Ex. 9.)

## II. ARGUMENT

### A.   Entry of default against Defendant BSA was proper in this case.

In this case, BSA did not file an answer or any responsive pleading, nor did it file a motion to extend the time to file a responsive pleading before the due date. While Relator was involved in settlement negotiations with Craighead, none of the settlement negotiations were

---

[6] There is no proof of a valid indemnity agreement, nor would Willi have any reason to believe that BSA would have a valid claim for indemnity because an indemnity agreement cannot indemnify a party for its own intentional misconduct. (*See* Willi Decl. ¶ 23.) Any waiver or assignment of liability for intentional misconduct or gross negligence is generally void. *See*, *e.g*., *Houston Exploration v. Halliburton Energy Servs.*, 269 F.3d 528, 533 (5th Cir. 2001).

7

directed to BSA until after entry of default. (*Compare* Willi Decl., Ex. 8, Notice of Clerk's Entry of Default *with* Willi Decl., Ex.7.)  Brann has established that he had no authority to file an answer on behalf of BSA when it was due or before entry of default, because BSA did not even inform Brann that it had been served. (*See* Def.'s Mot. at 2–3 ("At no point prior to the events giving rise to this instant motion did Mr. Brann see the Return of Service on BSA, nor was he made aware—from Plaintiff's counsel or anyone else—that BSA had been served."), Ex. 1, Brann Decl. ¶ 1; *see* Willi Decl., Ex. 11.)  BSA failed to "plead or otherwise defend" the lawsuit, and, thus, entry of default against BSA was proper in this case. FED. R. CIV. P. 55(a).

### B. Defendant BSA has not shown good cause to set aside entry of default.

Although the Court may grant a motion to set aside entry of default upon a showing of good cause, the evidence does not support a finding of good cause in this case. *See* FED. R. CIV. P. 55(c); *Franchise Holding II, LLC v. Huntington Rests. Group., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) (default upheld for lack of good cause); *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994) (same). In determining whether there is good cause, the Court considers:  (1) the prejudice to Relator and the United States if the default is set aside; (2) the existence of a meritorious defense; and (3) Defendant BSA's culpable conduct. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). These factors are not "talismanic," and courts will consider others. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (citations omitted). The ultimate inquiry remains whether the defendant shows "good cause" to set aside entry of default. *Id.*

#### (1) Relator and the United States will be prejudiced by setting aside the entry of default.

Setting aside the entry of default in this case would prejudice both the Relator and the United States. The threat of a default judgment encourages parties to timely file responsive pleadings and discourages the use of delay as a litigation tactic. *See Enron Oil Corp. v.*

8

*Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993).  Brann has already informed Willi that he is going to attempt to delay this lawsuit as long as possible to allow Congress time to pass proposed legislation which could affect this lawsuit.  (Willi Decl. ¶¶ 9–10.)  If BSA is allowed to gamble and engage in dilatory litigation tactics and delay a proper resolution of this case on the off-chance that Congress will amend the false patent marking statute, Relator and the United States will be denied their substantive rights to penalties against BSA pursuant to 35 U.S.C. § 292 as it is written today and will incur substantial legal expenses in the process.

### (2) BSA has failed to demonstrate that it has a meritorious defense.

Defendant BSA does not have a meritorious defense.  *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 14–15 (1st Cir. 2003).  A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support its defense.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993); *see also Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320–321 (2d Cir. 1986) (denying motion to reopen default for defendant's failure to demonstrate that it had a meritorious defense); *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 687 F.2d 182, 186 (7th Cir. 1982) (more than "bare legal conclusions set forth in defendants' proposed answer" are required).  The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.  *Enron*, 10 F.3d at 98.  Here, BSA failed to submit any evidence whatsoever to demonstrate that it has a meritorious defense.

### (3) BSA has not demonstrated a lack of willfulness.

To set aside the entry of default, BSA bears the burden to demonstrate a lack of willfulness.  *KPS*, 318 F.3d at 14.  Yet, in its motion to set aside entry of default, the evidence demonstrates that BSA default was willful.  BSA did not even notify its counsel that it had been served until after entry of default.  (Def.'s Mot. at 2–3 ("At no point prior to the events giving

9

rise to this instant motion did Mr. Brann see the Return of Service on BSA, nor was he made aware—from Plaintiff's counsel or anyone else—that BSA had been served."), Ex. 1, Brann Decl. ¶ 6.) BSA was well aware of the litigation (*see* Doc. 7), but consciously ignored its responsibility to inform its counsel that it had been served. Moreover, the suggestion that BSA was somehow prevented from filing a timely pleading because Willi did not mention that BSA had been served is without merit. *See CJC Holdings*, 979 F.3d at 64 (defendant's suggestion that it was deceived into believing that it would not be served because it received a courtesy copy of complaint was without merit). The Federal Rules of Civil Procedure do not require Relator's counsel to notify opposing counsel that another party has been served with a lawsuit. Finally, Brann's claim that he relied on an alleged statement that the U.S. District Court for the Western District of Texas has dispensed with the Federal Rules of Civil Procedure is unfounded and is contradicted by the statements made in writing to opposing counsel. (Willi Decl. ¶ 5, Ex. 1.)

As a clear demonstration of BSA's willfulness in ignoring the very existence of this lawsuit, BSA continues to sell the falsely marked products on-line at two different BSA locations even after BSA's motion to set aside entry of default was filed. (Willi Decl., Ex. 13, falsely marked Florida Sea Base belt receipt and photographs (Feb. 25, 2011); *id.*, Ex. 14 (falsely marked Northern Tier High Adventure belt receipt, and photographs) (Feb. 25, 2011).) Here, BSA failed to demonstrate a lack of willfulness.

### III. CONCLUSION

Because entry of default by the clerk against BSA was appropriate in this case, and because BSA has not demonstrated "good cause" to set aside entry of default, Relator requests the Court to deny Defendant BSA's motion to set aside the entry of default.

Respectfully submitted,

/s/ James N. Willi
James N. Willi
Texas Bar No. 00795719
jwilli@willilawfirm.com
Tracy J. Willi
Texas Bar No. 00784633
twilli@willilawfirm.com
Willi Law Firm, P.C.
9600 Escarpment Blvd.
Ste. 745, PMB 34
Austin, TX 78749-1983
Tel. (512) 288-3200
Fax (512) 288-3202

ATTORNEYS FOR RELATOR,
UNION PROPERTIES LLC

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system on March 4, 2011, which will send notification to the following counsel of record who are deemed to have consented to electronic service.

> Peter J. Brann
> (Admitted *Pro Hac Vice*)
> pbrann@brannlaw.com
> Stacy O. Stitham
> (Admitted *Pro Hac Vice*)
> sstitham@brannlaw.com
> Brann & Isaacson
> 184 Main St.; P.O. Box 3070
> Lewiston, ME 04243-3070
> Tel. (207) 786-3566
> Fax (207) 783-9325
>
> Price Ainsworth
> Law Offices of Price Ainsworth, P.C.
> 48 East Avenue
> Austin, TX 78701
> Tel. (512) 233-1129
> Fax (512) 472-9157

      /s/ James N. Willi
      James N. Willi